**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re:<br><br>FRUTTA BOWLS FRANCHISING, LLC,<br><br>　　　　　　　　　　　　　　Debtor. | Chapter 11<br>Case No. 19-13230 (MBK)<br><br>**Hearing Date and Time:**<br>**December 17, 2020, at 10:00 a.m.** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ANDREA DOBIN, CHAPTER 11 TRUSTEE FOR FRUTTA BOWLS FRANCHISING, LLC, CHAPTER 11 DEBTOR, AUTHORIZING (A) SALE OF DEBTOR'S ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(b), (f), AND (m); (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS PURSUANT TO 11 U.S.C. § 365; AND (C) GRANTING RELATED RELIEF**

　　　　　　　　　　　　　　　　　　　　　　**McMANIMON, SCOTLAND**
　　　　　　　　　　　　　　　　　　　　　　**& BAUMANN, LLC**
　　　　　　　　　　　　　　　　　　　　　　427 Riverview Plaza
　　　　　　　　　　　　　　　　　　　　　　Trenton, NJ 08611
　　　　　　　　　　　　　　　　　　　　　　(609) 695-6070
　　　　　　　　　　　　　　　　　　　　　　Andrea Dobin (adobin@msbnj.com)
　　　　　　　　　　　　　　　　　　　　　　Michele M. Dudas (mdudas@msbnj.com)
　　　　　　　　　　　　　　　　　　　　　　*Counsel to Andrea Dobin,*
　　　　　　　　　　　　　　　　　　　　　　*Chapter 11 Trustee*

Andrea Dobin, the Chapter 11 Trustee ("Trustee") for Frutta Bowls Franchising, LLC, Chapter 11 debtor ("Debtor"), by and through her undersigned counsel, McManimon, Scotland & Baumann, LLC, hereby submits this motion for entry of an Order authorizing the (A) sale of the Debtor's assets, free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(b), (f), and (m); (B) assumption and assignment of certain executory contracts pursuant to 11 U.S.C. § 365; and (C) granting related relief (the "Motion").

## STATEMENT OF FACTS[1]

On February 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the District of New Jersey. The Debtor designated this Chapter 11 case as a small business case pursuant to Fed. R. Bankr. P. 1020.

The Debtor is owned by Brooke Gagliano ("B. Gagliano") and her father, Patrick Gagliano ("P. Gagliano"). The Debtor is a franchisor of the Frutta Bowls franchise, a fruit bowl business that specializes in products featuring acai as its main component. Through mid-June, 2020, the day-to-day operations of the Debtor's business were conducted by B. Gagliano.

### A. Debtor's Business and Assets

According to information provided to the Trustee, Frutta Bowls, LLC ("Bowls"), an entity owned by B. Gagliano, licensed the Debtor certain intellectual property utilized by the franchisees, including a system relating to the establishment, development and operation of Frutta Bowls businesses including certain know-how, trade secrets, copyrighted material (registered or unregistered) and trademarks, including the service mark "Frutta Bowls" design (U.S. Reg. No.

---

[1] The Statement of Facts are taken from the Certification of the Trustee ("Dobin Cert.") filed in support of the Motion and pleadings on file.

5184834), word mark, "Frutta Bowl" (Serial No. 87593542 – application pending), and word mark "This is How I Frutta" (Serial No. 87574888 – application pending) and other unregistered trade names, trademarks, service marks, logos, trade dress, commercial symbols and proprietary rights (collectively, "IP").

On April 15, 2019, an Official Committee of Unsecured Creditors ("Committee") was formed (Docket No. 60).

On January 27, 2020, along with the Committee, the Debtor filed its First Modified Small Business Chapter 11 Combined Plan and Disclosure Statement (Docket No. 225) ("Combined Plan"). The Combined Plan was objected to by various parties, including former franchisees (Docket No. 256) and the Office of the United States Trustee (Docket No. 258). In addition to the objections filed to the Plan, the Debtor's franchisees were impacted by the COVID-19 pandemic ("Pandemic"), which forced some struggling locations out of business permanently. It had a direct impact on the Debtor's business operations.

As a result, including mounting administrative costs, the Debtor moved to convert the Chapter 11 case to Chapter 7 ("Motion to Convert") (Docket No. 294). In response to the Motion to Convert, the Committee filed a Cross-Motion for the appointment of a Chapter 11 Trustee ("Cross-Motion") (Docket No. 297). By Order entered May 22, 2020, the Debtor's Motion to Convert was denied, and the Committee's Cross-Motion was granted (Docket No. 302).

On May 22, 2020, the Trustee was appointed as Trustee (Docket No. 304). On May 26, 2020, an Order was entered confirming the appointment (Docket No. 307). Immediately after the appointment, the Trustee convened various calls to obtain information regarding the Debtor's business operations, including a call with the franchisees.

Through the Trustee's investigation, she learned that the fact that Debtor did not own the IP was disturbing to many of the franchisees; they alleged that this fact was not adequately disclosed by the Debtor in the Franchise Disclosure Document, as same was amended.

On June 2, 2020, B. Gagliano tendered her resignation from the Debtor. The Trustee negotiated terms for a Management Agreement ("Management Agreement") with RACG, LLC ("Manager"), to operate the Debtor's business, until a time when a purchaser is obtained, or other actions are taken in this Chapter 11 proceeding that prove that there is no need for the services to be rendered by the Manager. The Management Agreement was approved by the Court. (Docket No. 339). The Manager has been operating the Debtor's business since mid-June 2020, and franchisees have acknowledged an increased level of services and marketing being provided through the Manager.

On or about July 13, 2020, the Trustee came to a final resolution with Bowls, B. Gagliano, P. Gagliano, and related parties, which provided for the voluntary transfer of the IP from Bowls to the Debtor, as well as distribution rights, if any, from Distribution to the Debtor in exchange for mutual releases. On July 14, 2020, the Trustee filed a Motion to approve the settlement and compromise with the Court (Docket No. 340), which was approved by Order entered August 14, 2020 (Docket No. 359). By Assignment dated September 24, 2020, with an effective date of August 14, 2020, Bowls and Distribution, respectively transferred their IP and distribution rights, respectively, to the Debtor. A copy of the Assignment is annexed to the Dobin Cert. as *Exhibit "A."*

**B. Sale Process**

Once the Trustee was appointed, it became clear to her that the sale of the Debtor's business and assets was the only viable option for any prospect of filing a Plan. The Trustee began contacting various business brokers and investment bankers. The business brokers and investment

3

bankers all indicated that the Debtor was too small for their interest. However, a number of them put the Trustee directly in contact with parties which may have an interest in the business. The Trustee also contacted anyone that had reached out to the Debtor regarding a potential sale. The franchisees were also advised to forward any leads directly to the Trustee.

The unanimous feedback the Trustee received from the potential purchasers was that they would want to purchase the business sooner rather than later, so that the business could be transitioned and improved before things started getting back to "normal." Each and every potential purchaser indicated that any offer will be contingent upon the Debtor owning the IP. Several conversations with potential purchasers involved not paying the Estate any actual money for the Debtor's assets, but a willingness to invest time and money into improving the Debtor's business and brand. The Trustee declined these offers.

As of July 2020, the Trustee identified approximately five (5) potential purchasers, and preliminary due diligence came to an end on July 15, 2020. On that date, she received two (2) offers. The first was in the amount of $100,000, which also included accounts receivable ("First Offer"). The First Offer was not considered by the Trustee as it was too low to accomplish a Chapter 11 Plan. The second offer was from a different entity in the amount of $325,000, plus an agreed upon formula for outstanding accounts receivable. The Trustee accepted the offer, and that party initiated its due diligence ("Second Offer").

While due diligence completed and the party making the Second Offer indicated that it would enter into an asset purchase agreement, those discussions were eventually terminated. As a result, the Trustee continued to identify parties which may have an interest in the business and continued to solicit offers. The Trustee kept the Committee and existing franchisees aware of the progress of sale (as well as any creditor that contacted her), including the failure of the Second Offer to result in an asset purchase agreement. The Trustee spoke with approximately eight (8)

4

more parties expressing what she considered to be a serious interest, as well as several other parties in the field or industry.

These parties included other established franchisors with competitive businesses or which were looking to expand their current business, to smaller local business owners, to parties who were franchisees in other types of food establishments, to even some of the franchisees of this Debtor. On August 21, 2020, the party making the First Offer increased its offer to $325,000, which was still not acceptable to the Trustee, due in large part because the total purchase price included the Debtor's accounts receivable.

In or about early-September 2020, the Trustee began discussions with FBH Investments, LLC ("FBH") regarding its potential purchase of the Debtor's assets, and after several follow up discussions, expected an offer would be received from FBH in mid-October, 2020. On Friday, October 16, 2020, the party making the First Offer increased its offer to $400,000, plus additional consideration for "mutually agreed upon" amounts for the accounts receivable.

On Monday, October 19, 2020, the Trustee had a call with representatives of the party making the First Offer, and expected to receive a more concrete formula for accounts receivable within the next day or so. That party also indicated that its final offer would include a reduction of approximately $10,000 of its purchase price for any store which was open at the time of the offer, but closed prior to the closing date.

On the afternoon of October 19, 2020, FBH submitted its formal offer. The final offer made by FBH provided for $400,000 for the purchase price of the Debtor's assets, an assumption and assignment of existing contracts (collectively, the "Transferred Assets"), plus an agreed upon formula for outstanding accounts receivable as of the date of closing.

At that point, the Trustee accepted FBH's offer and rejected the pending First Offer since it would include terms (notably the reduction in the price for any store that closed) that would

5

make it not as good as the offer from FBH. FBH's due diligence was completed on or about November 6, 2020. Through FBH's designee, Frutta Bowls Franchisor, LLC ("Purchaser"), the Trustee negotiated and executed the Agreement of Sale ("Agreement") on November 17, 2020. A copy of the Agreement is annexed to the Dobin Cert. as *Exhibit "B."* Under the terms of the Agreement, the Purchaser has the right to identify which franchise agreements it wants to assume. Purchaser has engaged in substantial due diligence and will be prepared to notify the Trustee quickly of its intentions in this regard. Importantly, the sale price is not contingent upon the assumption of any specified number of franchise locations.

The Agreement includes an agreement to compensate Purchaser an amount not to exceed $20,000 should it not be the ultimate purchaser for coming forward with the highest and best offer and negotiating both the sale and Agreement. Purchaser is aware that this payment is subject to application and approval by the Court. As set forth in the Agreement, the purchase price contemplated by the sale is $400,000 for the Transferred Assets, plus an additional amount for accounts receivable ("Purchase Price").[2] There are no financing or other contingencies associated with the Agreement, other than obtaining Bankruptcy Court approval. This amount by Purchaser is significantly higher than any formal and informal offers received by the Trustee. The cash consideration is substantially higher than the cash component of the Combined Plan.

---

[2] The Trustee respectfully requests to disclose the formula for payment of accounts receivable *in camera* to the Court and to potential bidders pursuant to a Non-Disclosure Agreement. During the pendency of this Motion, she intend to continue to pursue collection of accounts receivable and does not want the current sale process to interfere with those efforts.

**LEGAL ARGUMENT**

The Trustee is seeking to sell the Transferred Assets pursuant to 11 U.S.C. § 363(b), (f), and (m) and Fed. R. Bankr. P 6004(f)(1).

Bankruptcy Code Section 363(b)(l) provides that, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(l); see also Fed. R. Bankr. P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction). The sale set forth herein is a "private" sale.

**I.    SALE OF ASSETS**

**A.  The "Sound Business Purpose Test" is Satisfied**

The Third Circuit, and courts within it, have found that a sale of a debtor's assets should be authorized pursuant to Bankruptcy Code Section 363 if a sound business judgment exists for such a sale. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (applying the "sound business purpose test" set forth in Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)).

Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was given to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith. In re Weatherly Frozen Food Group, Inc., 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); Del. & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

7

In this case, consideration of these four factors warrants approval of the Trustee's proposed sale.

### *i. Sound Business Justification for Private Sale*

In addition to the Abbotts Dairies requirements, courts consistently require debtors to establish a "sound business purpose" to sell any or all of their assets before confirmation of a reorganization plan. In re Lionel Corp. 722 F.2d 1063 (2d Cir. 1983); Delaware & Hudson Railway., 124 B.R. at 175-76; In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. ED. Pa. 1989); In re Conroe Forge & Manufacturing Corp., 82 B.R. 781, 783-86 (Bankr. W.D. Pa. 1988); Industrial Valley, 77 B.R. at 21.

This showing of a sound business justification does not have to be unduly exhaustive. Rather, a debtor is "simply required to justify the proposed disposition with sound business reason." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

In the present matter, there is a sound business justification for the sale of the Transferred Assets, because it will allow the Trustee to fund a Liquidating Plan to be filed in this case, thereby creating a pool of potential monies for distribution to creditors. Once the Trustee was appointed, it became clear that the sale of the Transferred Assets, including the rights in the Assumed Contracts, was the only viable option for any prospect of filing a Plan. In light of the uncertainty in connection with the ongoing unprecedented health and financial crisis being experienced by our country and worldwide and the decision of the current owners to walk away from the business, the sale of the Debtor's business was the best and possibly only option to maximize the value for creditors.

Accordingly, it is in the best interests of the Debtor's estate to sell the Transferred Assets to the Purchaser.

8

### ii. The Trustee is Providing Adequate Notice of the Sale

In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1). Bankruptcy Rule 6004 further provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with [Section] 363(b)(2) of the Code." Fed. R. Bankr. P. 6004(a); Fed. R. Bankr. P. 2002(a)(2). Pursuant to Bankruptcy Rule 2002(c)(1), the notice of the proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. Fed. R. Bankr. P. 2002(c)(1). In addition, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property and certain sale terms. Id.

In the within Motion, the Trustee is serving the Motion on the following parties, in addition to Notice of Private Sale being filed contemporaneously herewith: Office of the United States Trustee; Purchaser; any person or entity having expressed an interest in the Transferred Assets; Internal Revenue Service, the State of New Jersey; and all non-debtor contract counter-parties; list of twenty (20) largest creditors of the Debtor; Notice of Appearance parties; and other parties in interest as set forth in the Certificate of Service.

The Trustee is confident that the pool of potentially interested parties has been harvested and is being noticed with the within sale.

### iii. The Property is Being Sold for Fair Value

Courts will only approve Section 363(b) sales if the trustee or debtor has obtained a fair and reasonable price for the assets being sold. In re Delaware & Hudson Railway Co., 124 B.R.

9

169, 176 (D. Del. 1991); In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 20 (Bankr. E.D. Pa. 1987).

Here, the total purchase price contemplated by the sale is $400,000 for the Transferred Assets, plus an additional amount for accounts receivable. This is an increased amount from any formal and informal offers received by the Trustee. As demonstrated in the Trustee's Certification, she undertook an extensive marketing process, including discussions with brokers, investment bankers and, thereafter, multiple interested purchasers that (i) she identified; (ii) were identified by the brokers and investment bankers with whom she spoke; and (iii) stepped forward having been made aware of the fact that the Debtor's operations were for sale. The Trustee did not retain a broker or investment banker; virtually all of the professionals to whom she spoke declined to be retained. After extensive negotiations and sharing of confidential information with at least eight (8) different interested parties, the Trustee was able to negotiate the sale price that is the subject of this Motion.

Moreover, at a minimum, because the sale of the Transferred Assets is the subject of marketing, higher and better bids, and an auction before and at the sale hearing date (should a higher and better offer be deemed to be received by the Trustee), as set forth below, the Trustee is confident that the Transferred Assets' value has been maximized.

Accordingly, the Transferred Assets are being sold for fair value.

### iv. Purchaser is a "Good Faith" Purchaser

Purchaser is unrelated to the Debtor, its principals or the Trustee and her professionals. As such, the protections of Bankruptcy Code Section 363(m) should apply to Purchaser.

Bankruptcy Code Section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this Section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith,

10

> whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

While the Bankruptcy Code does not define "good faith," the Third Circuit has construed the "good faith buyer" standard to mean one who purchases "in good faith" and for "value." In addition, Courts have indicated that a party must show fraud or collusion between a purchaser and the debtor or trustee in order to demonstrate a lack of good faith. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986).

Here, there has been no fraud or collusion between the Trustee and Purchaser. On the contrary, the parties have engaged in lengthy and spirited negotiations. Any sale under an alternative transaction likewise will be the product of arms-length and good faith negotiations, as it will be subject to higher and better offers. Therefore, Purchaser, or any successful bidder, must be deemed a "good faith purchaser" pursuant to Bankruptcy Code Section 363(m).

**B. The Trustee Should Be Authorized to Sell the Property Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to Section 363(f)**

Pursuant to 11 U.S.C. § 363(f), a debtor may sell property under § 363(b) free and clear of any interests or liens in such property if one of the following criteria is met:

> (1) Applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity would be compelled in a legal or equitable proceeding to accept the money satisfaction of such interest.

See 11 U.S.C. § 363(f).

The language of § 363(f) is in the disjunctive, so a sale free and clear of liens, claims, and interests can be approved if any one of the aforementioned conditions contained in § 363(f) is met.

11

See 3 Collier on Bankruptcy, ¶ 363.06, p. 363-44 (15th ed. 1997). Here, there are no secured creditors of the Debtor, so there is no party from which the Trustee needs to obtain consent. Moreover, despite no creditor having asserting a secured claim, any such claim would be in *bona fide* dispute, thereby satisfying 11 U.S.C. §§ 363(f)(3) and (4).

As such, it follows that sale of the Transferred Assets free and clear of all other liens, claims, interests, and encumbrances is appropriate under 11 U.S.C. § 363(f).

## II.     ASSUMPTION AND ASSIGNMENT OF CONTRACTS

Bankruptcy Code Section 365(a) provides that a trustee, "subject to the court's approval, may assume . . . any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). However, if there has been a default in that executory contract or lease, then the debtor may not assume the contract until it (A) cures, or provides adequate assurance that it will promptly cure, the default prior to assumption; (B) "compensates, or provides adequate assurance that [it] will promptly compensate, a party . . . to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) "provides adequate assurance of future performance under such contract or lease." 11 U.S.C. § 365(b).

Section 365 "enables the [debtor] to maximize the value of the debtor's estate by assuming executory contracts that benefit the estate and rejecting those that do not." In re S.A. Holding Co., 357 B.R. 51, 56 (Bankr. D.N.J. 2006). Courts apply the business judgment test in determining whether to approve a debtor's motion to assume an executory contract or unexpired lease. Id. at 56. That lenient test requires the court to allow the debtor to assume a contract so long as the assumption benefits the estate. In re Central Jersey Airport Services, 282 B.R. 176, 183 (Bankr. D.N.J. 2002). "Once the debtor meets its burden, the non-debtor party bears the burden of proving that the debtor's decision derives from bad faith, whim, or caprice." Id.

12

"Upon assuming an executory contract, the trustee is likewise authorized to assign the executory contract."  In re Fleming Companies, Inc., 499 F.3d 300, 304-05 (3d Cir. 2007). Pursuant to 11 U.S.C. § 365(f), "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in an applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection."  11 U.S.C. § 365(f)(1).

Pursuant to 11 U.S.C. § 365(f)(2):

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

In the instant case, the two (2) requirements of 11 U.S.C. § 365(f)(2) are satisfied.  Through this Motion, the Trustee is seeking to assume the Assumed Contracts, which consist of the Franchise Agreements which the Purchaser has expressed its desire to assume, as well as other contracts related to the operation of the Debtor's business.  Accordingly, the Trustee respectfully requests the Court authorize her to assign the Assumed Contracts to the Purchaser.

To the extent Purchaser requests that the Trustee reject any executory contract or lease, the Trustee will request the Sale Order include such provisions.

## NOTICE OF SALE AND HIGHER AND BETTER OFFERS

A copy of the Motion and notice of the return date is being provided to the Office of the United States Trustee; Purchaser; any potential bidders or any party having expressed an interest in the Debtor's business and/or Transferred Assets; all non-debtor contract parties; list of twenty (20) largest creditors; and Notice of Appearance parties.

The Trustee will accept all higher and better offers for the Transferred Assets until December 10, 2020. All interested bidders must attend the sale hearing and notify the Trustee's counsel of their intent to bid at the sale hearing no later than seven (7) days prior to the return date. To be considered a higher and better offer, the initial overbid for the Transferred Assets must be at least $425,000 in cash (with no financing contingency), *plus* an agreement to purchase the Accounts Receivable for at least the same amount as that set forth in the Agreement.

Bidders will be subject to the same terms and conditions as Purchaser as set forth in the Agreement.

## CONCLUSION

**WHEREFORE,** the Trustee respectfully requests that this Court grant the Motion and grant such other and further relief requested herein and/or as this Court deems just and proper.

        McMANIMON, SCOTLAND
        & BAUMANN, LLC
        *Counsel to Andrea Dobin, Chapter 11 Trustee*

        By:    /s/ Michele M. Dudas
            ANDREA DOBIN
            MICHELE M. DUDAS

Dated: November 18, 2020

14