# EXHIBIT "B"

**ASSET PURCHASE AGREEMENT**

**by and between**

**ANDREA DOBIN, CHAPTER 11 TRUSTEE**

**for FRUTTA BOWLS FRANCHISING, LLC,**

**Chapter 11 Debtor**

**and**

**FRUTTA BOWLS FRANCHISOR, LLC, or its designees**

## CERTAIN DEFINITIONS

For purposes of the Agreement, the following are defined terms:

**Accounts Receivable.** "Accounts Receivable" means all accounts receivable owed to Frutta by franchisees for royalty and advertising fees, as reflected in the books and records of Frutta and any claim, remedies or other rights relating to any of the foregoing.

**Agreement.** "Agreement" means the within Asset Purchase Agreement by and between Seller and Purchaser.

**Assumed Agreements.** "Assumed Agreements" means all of Frutta's interest in and to certain agreements, including but not limited to (i) the Franchise Agreements; (ii) Master License Agreements; (iii) material branding agreements entered into by Seller; (iv) other Material Contracts.

**Bankruptcy Case.** "Bankruptcy Case" means the pending bankruptcy case of Frutta filed under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, in the United States Bankruptcy Court for the District of New Jersey at Case No. 19-13230 (MBK).

**Books and Records.** "Books and Records" means all books, records, files, reports, and other documents of Frutta of whatever nature and wherever located (whether in hard copy or stored or maintained electronically) that relate to the Transferred Assets or the operation of Frutta's business, including financial, business and accounting records, personnel records, records relating providers, suppliers or vendors, equipment records, administrative libraries, catalogs, operating manuals, and policies and procedures.

**Claims.** Except for the Excluded Assets, "Claims" means all present and future claims, causes of action, and judgments in favor of Frutta relating to the Transferred Assets and, to the extent assignable by Seller, all manufacturers and vendors' warranties (express or implied) and rights and claims assertable by (but not against) Frutta related to the Transferred Assets.

**Closing Date.** "Closing Date" means the closing of the sale of the Transferred Assets to Purchaser (within five (5) days after the conditions to closing set forth in Section 4 are satisfied.

**Debtor** or **Frutta.** "Debtor" or "Frutta" means Frutta Bowls Franchising, LLC.

**Encumbrance.** "Encumbrance" means any and all security interests, liens, claims, pledges, encumbrances, conditional sale or title retention agreements, judgments, demands, agreements, charges, easements, equitable interests, conditions, options, rights of first refusal, mortgages, deeds of trust, restrictions of any kind, including, without limitation, any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership, or other liabilities or encumbrances of any nature whatsoever, real and personal, tangible and intangible, known and unknown, matured and unmatured, actual, fixed and contingent.

**Excluded Assets.** "Excluded Assets" means: all cash, cash equivalents and investment assets of Frutta; all tax and/or insurance refunds; all bank accounts and other depository accounts of Frutta; any avoidance actions of the Seller authorized under Section 5 of the Bankruptcy Code,

any causes of action for malpractice as disclosed on Frutta's Schedules; and all books and records relating any other Excluded Assets.

**General Intangibles**. "General Intangibles" means any general intangibles as that term is used in the Uniform Commercial Code.

**Governmental Body**. "Governmental Body" means any United States or non-United States federal, national, supranational, state, provincial, local or similar government, governmental, regulatory or administrative authority, branch, agency or commission or any court, tribunal, or arbitral or judicial body (including, without limitation, any grand jury) or other legislative, executive or judicial governmental entity.

**Intellectual Property** "Intellectual Property" means Frutta's system relating to the establishment, development and operation of Frutta's businesses including certain know-how, trade secrets, copyrighted material (registered or unregistered) and trademarks, including the service mark "Frutta Bowls" design (U.S. Reg. No. 5184834), word mark, "Frutta Bowl" (Serial No. 87593542 – application pending), and word mark "This is How I Frutta" (Serial No. 87574888 – application pending) and other unregistered trade names, trademarks, service marks, logos, trade dress, commercial symbols and proprietary rights.

**Knowledge**. "Knowledge" means, with respect to the Seller, the actual knowledge of the Seller, based upon information provided in connection with her role as Chapter 11 Trustee.

**Legal Requirement**. "Legal Requirement" means any statute, law, ordinance, regulation, rule, code, common law, executive order, injunction, judgment, decree or order of any Governmental Body.

**Lien**. "Lien" has the meaning given to such term in the Bankruptcy Code.

**Permits**. "Permits" means permits, certificates, accreditations, registrations, licenses and any other authorizations necessary for or used in connection with operation of Frutta's business.

**Person**. "Person" means any individual, entity or Governmental Body.

**Proceeding**. "Proceeding" means any claim, action, suit, inquiry, proceeding, audit or investigation by or before any Governmental Body, or any other arbitration, mediation or similar proceeding.

**Purchaser**. "Purchaser" means Frutta Bowls Franchisor, LLC, or its designees, to acquire the Transferred Assets.

**Representatives**. "Representatives" means officers, managers, shareholders, members, employees, agents, attorneys, accountants, advisors and other representatives.

**Sale Order**. "Sale Order" means a final, non-appealable Order of the Bankruptcy Court pursuant to the Bankruptcy Code approving this Agreement and the transactions contemplated hereby.

ii

**Sale Motion**. "Sale Motion" means the *Motion For Entry of An Order Authorizing Andrea Dobin, Chapter 11 Trustee To Sell Substantially All of the Assets of Frutta Bowls Franchising, LLC, Chapter 11 Debtor, Free And Clear Of All Liens, Claims And Encumbrances* to be filed with the Bankruptcy Court in connection with this Agreement.

**Tax**. "Tax" means any multi-national, federal, state, local or foreign income, gross receipts, franchise, estimated, alternative minimum, add-on minimum, healthcare, sales, use, transfer, registration, value added, excise, natural resources, escheat or unclaimed property (whether or not characterized as a tax under applicable law), entertainment, amusement, severance, stamp, occupation, premium, windfall profit, environmental, customs, duties, real property, personal property, ad valorem, capital stock, social security, unemployment, disability, payroll, license, employee or other withholding, or other tax, of any kind whatsoever, including any interest, penalties or additions to Tax or additional amounts in respect of the foregoing.

**Transfer Taxes**. "Transfer Taxes" means all sales, transfer, documentary, stamp, recording, conveyance and similar taxes and fees (including any penalties and interest) due with regard to the transactions contemplated by this Agreement.

**Transferred Assets**. "Transferred Assets" shall have the meaning set forth in Section 1.1(a) of the Agreement.

4812-2422-3695, v. 1

**THIS ASSET PURCHASE AGREEMENT** is entered into as of November ___, 2020, by and among Frutta Bowls Franchisor, LLC, a Delaware limited liability company, and Andrea Dobin, Chapter 11 Trustee for Frutta Bowls Franchising, LLC, a New Jersey limited liability company. Certain capitalized terms used in this Agreement and not otherwise defined in the body hereof are defined in the Definitions Section, above.

**RECITALS**

A.      On February 15, 2019, Frutta commenced the Bankruptcy Case.

B.      On April 15, 2019, an Official Committee of Unsecured Creditors was formed (Docket No. 60).

C.      On May 22, 2020, the Trustee was appointed as Trustee, which was confirmed by Order entered on May 26, 2020.

D.      On October 20, 2020, the Trustee and Purchaser executed a Letter of Intent, and subsequently negotiated this Agreement.

E.      The Transferred Assets (defined below) are being transferred herein are intended to be sold free and clear of all Liens, claims, Encumbrances and interests pursuant to Section 363 of the Bankruptcy Code and subject to the Sale Order.

**AGREEMENT**

The parties to this Agreement, intending to be legally bound, hereby agree as follows:

**1.      SALE OF ASSETS; RELATED TRANSACTIONS**

**1.1.      Purchase and Sale of Assets.** Upon the terms and subject to the conditions set forth in this Agreement, and satisfaction of the terms and conditions set forth in the Sale Order, at the closing, Seller shall sell, assign, transfer, convey and deliver to Purchaser all of Frutta's right, title and interest in and to the Transferred Assets, and Purchaser shall purchase, acquire, accept and pay for the Transferred Assets, free and clear of all Liens, claims, Encumbrances and interests, to the fullest extent permitted by Section 363 of the Bankruptcy Code. This Agreement is expressly subject to approval by the Bankruptcy Court, and the Seller receiving higher and better offers for the Transferred Assets (defined below).

**(a)      Transferred Assets.** For purposes of this Agreement, the term "Transferred Assets" means substantially all of Frutta's right, title and interests in substantially all of its assets, properties and rights of any nature, tangible or intangible, wherever located, now existing or hereinafter acquired, including, without limitation, all of Frutta's right, title and interest in and to the following assets but excluding, in all cases, any of the Excluded Assets:

    i.      Frutta's Intellectual Property;
    ii.      The Assumed Agreements;
    iii.      All licenses (only to the extent transferable) and all rights to existing or related websites and URLs, social media handles or identifications, related email addresses

 and phone numbers;

 iv. All goodwill associated with Frutta's business as a going concern;

 v. To the extent available, all of Frutta's book, records files, documents and other written or electronic materials relating to Transferred Assets or the business;

 vi. To the extent available, all corporate, financial and tax records of Frutta, including without limitation, Frutta corporate charter, corporate minutes or other documents and instruments relating solely to the organization, maintenance, and existence of the Seller as a limited liability company; and

 vii. To the extent available, all material assets necessary to execute normal operations of the business.

 **1.2.** **No Assumption of Liabilities**. In no event will Purchaser assume, agree to pay, discharge or satisfy any debt, liability or obligation under this Agreement or otherwise, or have any responsibility for, any debt, liability or obligation of Frutta of any kind, whether known, unknown, contingent or otherwise.

 **1.3.** **No Successors**. Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Transferred Assets, to: (1) be a successor (or other similarly situated party) to Frutta, or (2) have, *de facto* or otherwise, merged with Frutta, or (3) be a continuation or substantial continuation of Seller or any business of Frutta.

 **1.4.** **Purchase Price.** As consideration for the sale, conveyance and delivery of the Transferred Assets, Purchaser shall pay to the Seller at closing, by check or by the wire transfer of immediately available funds, the sum of $400,000, plus ████████████████ of the outstanding accounts receivable ████████ (the "Purchase Price"). The Purchase Price is due and payable in full at closing.

 **(a)** **Deposit**. Upon execution of this Agreement, the Purchaser will provide Seller with a $40,000 deposit for the Transferred Assets, plus an additional $10,000 deposit for any unbilled franchise fees as of the Closing Date (collectively, the "Deposit"). The Deposit will be made by check or wire payable to "McManimon, Scotland & Baumann, LLC – Attorney Trust Account." The Deposit is non-refundable upon satisfaction of the Contingencies set forth in Section 4.

 **(b)** **Taxes**. Apart from the Purchase Price being paid to the Seller, Frutta shall be solely responsible for the payment of all taxes, if any, (i) imposed on Frutta for any period, (ii) imposed with respect to the Transferred Assets for any period (or portion of any period) ending on or before the Closing Date, or (iii) imposed in connection with the transactions contemplated by this Agreement (including any Transfer Taxes).

 **(c)** **Additional Bids; Expense Reimbursements.** The Parties acknowledge that the transactions contemplated by this Agreement shall be noticed to all creditors of Frutta and otherwise advertised. The sale is subject to higher and better offers as determined by the Bankruptcy Court. In the event that Seller terminates this Agreement and accepts a higher and better offer, Purchaser may apply to the Court for reimbursement of its expenses relating to this proposed transaction pursuant to Section 503(b) of the Bankruptcy Code, as long as such expenses shall not exceed the sum of $20,000 ("Expense Reimbursement"). The Seller shall pay to the

Purchaser the Expense Reimbursement upon (i) receipt and clearance of the sale proceeds from the higher and better offer; and (ii) allowance of the Expense Reimbursement by the Bankruptcy Court.

      **1.5.**    **Closing**. The closing of the sale of the Transferred Assets to Purchaser shall take place within five (5) days after the conditions to closing set forth in Section 4 are satisfied. The parties' target Closing Date is December 30, 2020. At the closing, the Seller shall execute and deliver to Purchaser a Bill of Sale, a form of which is attached hereto as **Exhibit A**, the Assumption and Assignment Agreement relative to any contract sought to be assigned by Purchaser, a form of which is attached hereto as **Exhibit B** (the "Assumption and Assignment Agreement"), and the Trademark Assignment Agreement, a form of which is attached as **Exhibit C** ("Trademark Agreement"). The closing shall be effective as of 12:01 AM on the Closing Date.

**2.**      **REPRESENTATIONS AND WARRANTIES OF THE SELLER**

      The Seller represents and warrants to Purchaser as of the date hereof and as of the closing, as follows:

      **2.1.**    **Authority; Binding Nature of Agreements.** The execution and delivery of this Agreement and the Assignment and Assumption Agreement (collectively, the "Selling Party Transaction Documents") by Seller, and the performance of all obligations of Seller hereunder and thereunder, have been duly authorized, and no other action or approval is necessary for Seller's execution, delivery or performance of this Agreement. Upon entry of the Sale Order by the Bankruptcy Court, Seller will have the requisite power and authority to execute and deliver this Agreement.

      **2.2.**    **Title to Transferred Assets; Condition of Transferred Assets**.

          **(a)**    The Transferred Assets are being sold free and clear of any Liens, claims, interests and Encumbrances, all of which Encumbrances will be divested from the Transferred Assets by the Sale Order. Upon completion of the transaction contemplated hereby, Purchaser will be vested with good and marketable title to the Transferred Assets, free and clear of all encumbrances.

          **(b)**    Purchaser acknowledges that it is purchasing the Transferred Assets **"WHERE IS"** and **"AS IS"** without reliance upon any warranty or representation made by Seller or by any agents or representatives of any kind or nature, including, without limitation the condition of the Transferred Assets. Purchaser has, at its own expense, undertaken substantial due diligence in connection with this transaction and acquisition of the Transferred Assets and is satisfied with the results thereof.

4812-2422-3695, v. 1

**2.3.    Proceedings.** Other than the Bankruptcy Case or other proceedings related thereto, there is no proceeding pending, or to the Seller's Knowledge, threatened, seeking to prevent, hinder, modify, delay or challenge the transactions contemplated by this Agreement.

**3.    COVENANTS.**

**3.1.    Access to Information.** As of the date of this Agreement, Purchaser has concluded its due diligence. The Seller will afford Purchaser and its Representatives reasonable access during normal business hours to its properties, books, records and franchisees during the period prior to the closing to obtain all information concerning the Transferred Assets as Purchaser may reasonably request to facilitate an orderly transition.

**3.2.    Reasonable Efforts.** Subject to the terms and conditions set forth herein, Seller and Purchaser shall use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated by this Agreement.

**3.3.    Notification of Certain Matters.** Until the closing, Seller and Purchaser shall promptly notify the other party in writing of any fact, condition, occurrence or nonoccurrence of any event of which it is aware that is reasonably likely to result in (a) the conditions set forth in Section 4 of this Agreement becoming incapable of being satisfied or (b) a breach of any representation, warranty or covenant of such party.

**3.4.    Relief from Stay of Order.** The Seller shall use commercially reasonable efforts to seek relief from the fourteen (14) day stay provided by Fed.R.Bankr.P. 6004(h). This transaction shall be free from transfer taxes, or the Seller shall request such relief if transfer taxes are applicable.

**4.    CONDITIONS TO OBLIGATION TO CLOSE.**

**4.1.    Conditions to the Obligations of Purchaser.** The obligation of Purchaser to consummate the transactions that are to be consummated at the closing is subject to the satisfaction by or at the closing of each of the following conditions, any or all of which may be waived by Purchaser in its sole discretion:

    **(a)** Each of the agreements, covenants and obligations that Seller is required to perform or to comply with pursuant to this Agreement at or prior to the closing will have been duly performed and complied with.

    **(b)** The Bankruptcy Court shall have entered a final, non-appealable Sale Order upon sufficient notice to all parties in interest, which Sale Order shall include, without limitation, findings of fact and conclusions of law that Purchaser is not a successor in interest to the Seller or any affiliate of the Seller and that Purchaser is a good faith purchaser pursuant to section 363 of the Bankruptcy Code.

**4.2.    Conditions to the Obligations of the Seller.** The obligation of the Seller to consummate the transactions that are to be consummated at the closing is subject to the satisfaction

4812-2422-3695, v. 1

by or at the closing of each of the following conditions, any or all of which may be waived by the Seller in its sole discretion:

**(a)** Each of the agreements, covenants and obligations that Purchaser is required to perform or to comply with pursuant to this Agreement at or prior to the closing will have been duly performed and complied with.

**(b)** Each material consent, approval, ratification, waiver or other authorization of any Person, government or governmental agency or instrumentality (federal, state, or local) necessary, in the reasonable opinion of the Seller, for the consummation by the Seller of the transactions contemplated hereby, will have been obtained and will be in full force and effect.

**(c)** The performance of this Agreement, the Assignment and Assumption Agreement and the consummation of the closing will not, directly or indirectly (with or without notice or lapse of time), violate, contravene, conflict with or result in a violation of any applicable law and will not violate any order of any court or Governmental Body of competent jurisdiction, and no suit, action, investigation or legal or administrative proceeding will have been brought or threatened by any Person, government or governmental agency or instrumentality (federal, state, or local) that questions the validity or legality of this Agreement or the transactions contemplated hereby.

**(d)** Purchaser shall pay the Purchase Price to the Seller in accordance with the Sale Order.

**(e)** The Bankruptcy Court enters a final, non-appealable Sale Order pursuant to Fed.R.Bankr.P. 6004.

## 5. TERMINATION OF AGREEMENT

**5.1. Termination**. This Agreement may be terminated at any time prior to the closing in the manner provided below:

**(a)** by mutual written consent of Purchaser and the Seller;

**(b)** by Purchaser or the Seller, if a material breach of any provision of this Agreement has been committed by the other party or parties and such breach has not been waived by Purchaser or the Seller, as applicable;

**(c)** by either the Seller or Purchaser if a Governmental Body shall have issued an order, decree or ruling or taken any other action (including, without limitation, the failure to have taken an action), in any case having the effect of permanently restraining, enjoining or otherwise prohibiting the closing or the satisfaction of the condition to closing in Section 4, which order, decree, ruling or other action is final and nonappealable;

**(d)** by either the Seller or Purchaser, if the closing does not occur on or before December 30, 2020, unless extended by the parties in writing and unless such failure of closing to occur is on account of the breach hereof or intentional delay hereunder of the party seeking to so terminate;

5

(e)    automatically, and without further action by any Party, if the Bankruptcy Case is converted into cases under Chapter 7 of the Bankruptcy Code or upon the effectiveness of any dismissal order entered by the Bankruptcy Court in the Bankruptcy Case; or

(f)    by Order of the Bankruptcy Court.

**5.2.    Notice of Termination; Effect of Termination**.    Any termination of this Agreement under Section 5.1 above will be effective immediately upon the delivery of a valid written notice of the terminating party to the other party hereto.  In the event of the termination of this Agreement as provided in Section 5.1, this Agreement shall be of no further force or effect; provided, however, that if such termination is pursuant to Section 5.1(b), the terminating party's or parties' right to pursue all legal remedies will survive such termination unimpaired.

**5.3.    Amendment**.  Subject to applicable law, this Agreement may only be amended by execution of an instrument in writing signed on behalf of Purchaser and Seller.

6.    **MISCELLANEOUS PROVISIONS**

**6.1.    Counterparts**.  This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, it being understood that all parties need not sign the same counterpart.  Electronic signatures shall be deemed to constitute original signatures for all purposes.

**6.2.    Entire Agreement; Third-Party Beneficiaries**.  Except for the Consent Order and the Sale Order, which the parties hereto acknowledge, this Agreement and the documents and instruments and other agreements among the parties hereto as contemplated by or referred to herein (a) constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and (b) are not intended to confer upon any other Person any rights or remedies hereunder.

**6.3.    Other Remedies**.  Except as otherwise provided herein, any and all remedies herein expressly conferred upon a party will be deemed cumulative with and not exclusive of any other remedy conferred hereby, or by law or equity upon such party, and the exercise by a party of any one remedy will not preclude the exercise of any other remedy.  The parties hereto agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.

**6.4.    Governing Law**.  This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey, without regard to its conflicts of law principles.  Each party agrees that jurisdiction and venue for any litigation arising out of this Agreement shall be in the Bankruptcy Court; provided, however, that if at the time of commencement of any such litigation, there is no longer a pending Bankruptcy Case, jurisdiction and venue for any litigation arising out of this Agreement, provided jurisdiction may be obtained under applicable Law, shall be in the U.S. District Court for the District of New Jersey, and each party hereby waives any objections they may have with respect thereto (including, without limitation, any objections based upon *forum non conveniens*).  **PURCHASER AND SELLER HEREBY IRREVOCABLY**

6

**WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT, ANY ANCILLARY DOCUMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.**

6.5.    **Assignment**.  No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties.  Any purported assignment in violation of this Section 6.6 shall be void.  Subject to the preceding sentence, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

6.6.    **Specific Performance**.  Each party acknowledges and agrees that a non-breaching party would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms and that any breach of this Agreement by a party could not be adequately compensated by monetary damages.  Accordingly, each party agrees that, in addition to any other right or remedy to which a non-breaching party may be entitled, at law or in equity, a non-breaching party will be entitled to enforce any provision of this Agreement against a breaching party by a decree of specific performance and to temporary, preliminary and permanent injunctive relief to prevent breaches or threatened breaches of the provisions of this Agreement, without posting any bond or other undertaking.

6.7.    **Brokers and Finders.**  No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the transactions contemplated hereunder, and no Person is entitled to any fee or commission or like payment in respect hereof.

6.8.    **Joint Preparation**.  The parties have jointly participated in the negotiation and drafting of this Agreement.  In the event of any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties and no presumption shall arise.

<u>**[SIGNATURE PAGE FOLLOWS]**</u>

4812-2422-3695, v. 1

Purchaser and the Seller have caused this Agreement to be executed and delivered as of the date first written above.

**PURCHASER:**

FRUTTA BOWLS FRANCHISOR, LLC,
or its designees

By: _____

Name:  Regina Mincberg
Title:  General Counsel and Secretary

**SELLER:**

FRUTTA BOWLS FRANCHISING, LLC

By: _____

Name:  Andrea Dobin
Title:  Chapter 11 Trustee

8

4812-2422-3695, v. 1

# EXHIBIT A

# BILL OF SALE

# BILL OF SALE

**THIS BILL OF SALE** is made on December ___, 2020,

**BY**

   **ANDREA DOBIN, CHAPTER 11 TRUSTEE FOR FRUTTA BOWLS FRANCHISING, LLC,** referred to as the Seller,

**TO**

   **FRUTTA BOWLS FRANCHISING, LLC**, **or its designee**, referred to as the Purchaser,

   **1.   Transfer of Ownership.** The Seller does hereby absolutely and unconditionally, gives, grants, bargains, sells, transfers, sets over, assigns, conveys, releases, confirms and delivers to Purchaser all of the personal property set forth in the Asset Purchase Agreement ("Agreement") dated November 17, 2020, without representation or warranty of any kind whatsoever except as set forth in and subject to the terms of the Agreement.

   **2.   Consideration.** The Purchaser has tendered to the Seller the amount set forth in the Agreement and approved in the *Order Authorizing Andrea Dobin, Chapter 11 Trustee to Sell Substantially All of the Assets of Frutta Bowls Franchising, LLC, Chapter 11 Debtor, Free And Clear Of All Liens, Claims And Encumbrances* dated December __, 2020, entered by the Honorable Michael B. Kaplan, Chief United States Bankruptcy Judge, a copy of which is annexed hereto as **Exhibit A**.

   **3.   Promises by Seller.** The Seller agrees to execute any additional documents needed by Purchaser to transfer title to Purchaser.

   **4.   Signatures.** The Seller agrees to the terms of this Bill of Sale.

   **FRUTTA BOWLS FRANCHISING, LLC**


   By: _____
       Name: ANDREA DOBIN
       Title:  Chapter 11 Trustee

# EXHIBIT B

## ASSIGNMENT AND ASSUMPTION AGREEMENT

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This **ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**") is dated as of December __, 2020 (the "**Effective Date**"), by and between Frutta Bowls Franchisor, LLC, or through its designee, a Delaware limited liability company ("**Assignee**") and Andrea Dobin, in her capacity as Chapter 11 Trustee ("**Trustee**") for Frutta Bowls Franchising, LLC, a New Jersey limited liability company ("**Assignor**").  Capitalized terms used herein and not otherwise defined herein shall have the meanings given to them in that certain Asset Purchase Agreement, dated as of November 17, 2020, between Assignor and Assignee (the "**Purchase Agreement**").

### RECITALS

**WHEREAS**, pursuant to the Purchase Agreement, the Trustee agreed to convey, assign, transfer and deliver to Assignee, and Assignee has agreed to acquire and take assignment and delivery from the Trustee, all of Assignor's right, title and interest in and to certain assumed contracts as set forth on **Exhibit "A"** hereto ("Assumed Contracts"); and

**WHEREAS**, the Trustee has been authorized by the Bankruptcy Court to consummate the transaction described in the Purchase Agreement.

**NOW, THEREFORE**, for and in consideration of the premises, agreements and covenants hereinafter set forth, and other good and valuable consideration, the receipt and adequacy of which are forever acknowledged and confessed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      **Assignment**.  Effective as of the Effective Date  and subject to the terms and conditions of the Purchase Agreement, the Trustee, on behalf of Assignor and its successors and permitted assigns, hereby assigns and transfers to Assignee, and Assignee hereby accepts the right, title and interest in the Assumed Contracts and assumes and agrees to pay, perform, fulfill and discharge all of Assignor's obligations under the Assumed Contracts as set forth in the Purchase Agreement.

2.      **Terms of the Purchase Agreement**.  The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, and agreements relating to the Purchased Assets are incorporated herein by this reference.  The parties hereto acknowledge and agree that the representations, warranties, covenants, and agreements contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

3.      **Power of Attorney**.  The Trustee hereby constitutes and appoints Assignee as the Assignor's true and lawful attorney, with full power of substitution, in the name of Assignor or otherwise, and on behalf and for the benefit of Assignee, to demand and receive from time to time any and all of the right, title and interest in the Assumed Contracts, and to execute such other documents and take such other action as may be necessary from time to time to carry out this Agreement. Trustee hereby declares that the foregoing powers are coupled with an interest and shall be irrevocable.

4.      **Amendments, Successors and Assigns**.  This Agreement may only be amended by a written amendment executed by Trustee, on behalf of the Assignor, on the one hand, and Assignee, on the other hand.  This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

**5.**     **No Implied Rights in Third Parties**.  Nothing expressed or implied in this Agreement is intended to confer upon any person, other than the parties hereto, or their respective successors or permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

**6.**     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey without giving effect to any choice or conflict of law provision or rule (whether of the State of New Jersey or any other jurisdiction).  Each party agrees that the jurisdiction and venue for any litigation arising out of this Agreement shall be in the Bankruptcy Court; provided, however, that if at the time of commencement of any such litigation, there is no longer a pending Bankruptcy Case, jurisdiction and venue for any litigation will be in a Court of appropriate jurisdiction in the State of New Jersey.

**7.**     **Severability**.  In the event any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason and in any respect, such invalidity, illegality or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Agreement, which shall be and remain in full force and effect, enforceable in accordance with its terms.

**8.**     **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**9.**     **Further Assurances**.  Each of the parties hereto, for itself and its successors, assigns or other legal representatives, hereby covenants and agrees that it will, without further consideration, cooperate, assist, execute, and deliver to the other party further instruments of assignment and assumption, and take such other action, upon the reasonable request of the other party, to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

[*Signature Page Immediately Follows*]

**IN WITNESS WHEREOF**, the parties have executed and delivered this Agreement as of the Effective Date.

**ASSIGNOR:**

FRUTTA BOWLS FRANCHISING, LLC

By: _____

      Name:  Andrea Dobin
      Title:  Chapter 11 Trustee

**ASSIGNEE:**

FRUTTA BOWL FRANCHISOR, LLC, and/or its Designee

By: _____

      Name:
      Title:

**ASSUMED CONTRACTS**

# EXHIBIT C

## TRADEMARK ASSIGNMENT AGREEMENT

# TRADEMARK ASSIGNMENT AGREEMENT

This TRADEMARK ASSIGNMENT AGREEMENT ("**Trademark Assignment**"), dated as of December __, 2020, is made by Andrea Dobin, as Chapter 11 Trustee ("**Seller**") for Frutta Bowls Franchising, LLC, Chapter 11 debtor (**"Debtor"**), and a limited liability company of the State of New Jersey, with an address c/o McManimon, Scotland & Baumann, LLC, 427 Riverview Plaza, Trenton, New Jersey 08611, in favor of Frutta Bowls Franchisor, LLC, or its designee ("**Buyer**"), a limited liability company formed under the laws of the State of Delaware, located at _____, the purchaser of certain assets of Seller pursuant to the Asset Purchase Agreement between the Buyer, on the one hand, and Seller, on the other hand, dated as of November 17, 2020 (the "**Asset Purchase Agreement**").

**WHEREAS**, under the terms of the Asset Purchase Agreement and the Order Authorizing the Seller to consummate the sale described therein a copy of which is attached hereto as **Exhibit "A,"** Seller has conveyed, transferred, and assigned to Buyer, among other assets, certain intellectual property of the Debtor, and has agreed to execute and deliver this Trademark Assignment, for recording with the United States Patent and Trademark Office and corresponding entities or agencies in any applicable jurisdictions;

**NOW THEREFORE**, the parties agree as follows:

1.      Assignment. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby irrevocably conveys, transfers, and assigns to Buyer, and Buyer hereby accepts, all of the Debtor's right, title, and interest in and to the following:

(a)      the trademark registrations and trademark applications set forth on Schedule 0 hereto and all issuances, extensions, and renewals thereof (the "**Assigned Trademarks**"), together with the goodwill of the business connected with the use of, and symbolized by, the Assigned Trademarks; provided that, with respect to the United States intent-to-use trademark applications set forth on Schedule 0 hereto, the transfer of such applications accompanies, pursuant to the Asset Purchase Agreement, the transfer of Seller's business, or that portion of the business to which the trademark pertains, and that business is ongoing and existing;

(b)      all rights of any kind whatsoever of Seller accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

(c)      any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

(d)      any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for

past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2.      Recordation and Further Actions. Seller hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Trademark Assignment upon request by Buyer. Following the date hereof, upon Buyer's reasonable request, and at Buyer's sole cost and expense, Seller shall take such steps and actions, and provide such cooperation and assistance to Buyer and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be reasonably necessary and available to her to effect, evidence, or perfect the assignment of the Assigned Trademarks to Buyer, or any assignee or successor thereto.

3.      Terms of the Asset Purchase Agreement. The parties hereto acknowledge and agree that this Trademark Assignment is entered into pursuant to the Asset Purchase Agreement, to which reference is made for a further statement of the rights and obligations of Seller and Buyer with respect to the Assigned Trademarks. The representations, warranties, covenants, agreements, and indemnities contained in the Asset Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Asset Purchase Agreement and the terms hereof, the terms of the Asset Purchase Agreement shall govern.

4.      Counterparts. This Trademark Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Trademark Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Trademark Assignment.

5.      Successors and Assigns. This Trademark Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

6.      Governing Law. This Trademark Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Trademark Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of New Jersey, without giving effect to any choice or conflict of law provision or rule (whether of the State of New Jersey or any other jurisdiction).

[SIGNATURE PAGE FOLLOWS]

2

4831-1735-3937, v. 1

**IN WITNESS WHEREOF**, Seller has duly executed and delivered this Trademark Assignment as of the date first written above.

FRUTTA BOWLS FRANCHISING, LLC

By: _____

Name: Andrea Dobin

Title:  Chapter 11 Trustee

Address for Notices: 427 Riverview Plaza, Trenton, New Jersey 08611

| | |
|---|---|
| STATE OF NEW JERSEY | ) |
| | )SS. |
| COUNTY OF MERCER | ) |

On the ____ day of December, 2020, before me personally appeared Andrea Dobin, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that she executed the same in her authorized capacity as the Chapter 11 Trustee of Frutta Bowls Franchising, LLC, Chapter 11 Debtor, a New Jersey limited liability company, and acknowledged the instrument to be her free act and deed/the free act and deed as the Chapter 11 Trustee for Frutta Bowls Franchising, LLC, for the uses and purposes mentioned in the instrument.

_____

Notary Public

Printed Name:

My Commission Expires:

AGREED TO AND ACCEPTED:

FRUTTA BOWLS FRANCHISOR, LLC, or its Designee

By: _____

Name:

Title:

Address for Notices:

| | |
|---|---|
| STATE OF _____ | ) |
| | )SS. |
| COUNTY OF _____ | ) |

On the ____ day of December, 2020, before me personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that [he/she] executed the same [n [his/her] authorized capacity as the _____ of _____, a _____ limited liability company, and acknowledged the instrument to be [[his/her] free act and deed/the free act and deed of _____ for the uses and purposes mentioned in the instrument.

_____

Notary Public

Printed Name:

My Commission Expires:

3

## SCHEDULE 1

### Assigned Trademarks

Trademark Registrations

| Mark | Jurisdiction | Registration Number | Registration Date |
|------|-------------|--------------------|--------------------|
| Frutta Bowls | NJ | 5184834 | April 18, 2017 |
| Frutta Bowl | NJ | 5463165 | May 8, 2018 |
| Frutella Bowl | NJ | 5463167 | May 8, 2018 |
| Caveman Bowl | NJ | 5464601 | May 8, 2018 |

Trademark Applications

| Mark | Jurisdiction | ITU Status | Application Serial Number | Filing Date |
|------|-------------|-----------|--------------------------|-------------|
| Frutta Bowl | NJ | Pending | 87593542 | |
| This is How I Frutta | NJ | Pending | 87574888 | |

4